**MINUTE ENTRY**
**ROBY, M. J.**
**July 16, 2008**

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JASON B. GRESHAM** | **CIVIL ACTION** |
| **VERSUS** | **NO: 07-03919** |
| **CAL DIVE INTERNATIONAL, INC., ET AL.** | **SECTION: "R" (4)** |

### ORDER

Before the Court is a **Motion to Compel Independent Psychiatric Examination Due to Plaintiff's New Claims of Psychological Injury (R. Doc. 26)**, filed by the Defendant, Cal Dive International, Inc. ("Cal Dive"). In opposition, the Plaintiff, Jason B. Gresham ("Gresham"), filed an Opposition to Motion to Compel Psychiatric Examination (R. Doc. 35). Thereafter, Cal Dive filed an **Ex Parte Motion for Leave to File Reply Memorandum (R. Doc. 36)**, which the Court **GRANTS** here, and considers below.

Cal Dive's motion to compel was heard with oral argument on Wednesday, July 16, 2008. On the day and time of the hearing, John Oren Charrier, Jr. appeared on behalf of Gresham and Thomas Patrick Baynham appeared on behalf of Cal Dive. The hearing was recorded by Diane

MJSTAR: 00:13

Gertjejansen, at 504-589-7778.

**I.     Background**

This action is an admiralty case involving Gresham, who was employed as a production roustabout by Baker Energy aboard the vessel "ATP Innovator" in the Gulf of Mexico. (R. Doc. 1.) Gresham alleges on February 7, 2007, an employee of Cal Dive, who was also working on the ATP Innovator, negligently injured Gresham's left thumb. (R. Doc. 1.) Gresham asserts that his left thumb was badly fractured and the majority of its flesh ripped off, requiring extensive surgical repair. (R. Doc. 1.) He maintains that the injuries rendered his thumb largely useless. (R. Doc. 1.)

Gresham contends that Cal Dive acted negligently and with fault, and therefore, seeks damages, including those for medical expenses, pain and suffering, mental anguish, disability, humiliation and embarrassment, wage loss, and lost earnings capacity. (R. Doc. 1.) He also seeks pre-judgment interest on the damages. (R. Doc. 1.) Gresham maintains that prior to his injury, he was able-bodied and received an average annual income of $50,000.00. (R. Doc. 1.) However, after his injury, he asserts that he has been unable to perform his previous occupation, and therefore, will suffer future wage losses. (R. Doc. 1.)

On October 25, 2007, the Court issued a Scheduling Order in the case, setting the deadline for depositions and discovery on June 24, 2008. (R. Doc. 10, pp. 1-2.) The Order also set the final pretrial conference for July 24, 2008 and trial for August 4, 2008. (R. Doc. 10, p. 3.)

On January 31, 2008, Gresham's treating psychologist, James W. Quillin, Ph.D ("Dr. Quillin")[1], began to document Gresham's psychological condition after the accident at issue. He noted that:

---

[1] Dr. Quillin is listed on Gresham's witness list.

> His sleep pattern is improving with the exception of apparent anxiety episodes which occur every other night on average. He reports that he will wake up in a sweat with tachycardia, shortness of breath but no memory of nightmares. He feels "stressed" during these episodes which last some 15-20 minutes. He reports that he is usually able to get back to sleep but on occasion cannot get back to sleep and gets up as a result. He reports that several times a day he will have what sounds like a mild anxiety reaction with brief runs of tachycardia, shortness of breath and subjective sense of having a heart attack. These resolve spontaneously after a few minutes. . . . His interest level is good and he is beginning to enjoy social interaction again. He had some crying spells for a period of time following his injury but these have resolved. He denies any suicidal ideation. He is doing better with his depression and indicates that he was extremely irritable for a period of time, wanting to avoid being around people including his wife and children. This has improved though he indicates that his wife reports that he still has some irritability. This is very uncharacteristic for him. He reports that he has unwelcome ruminative features regarding his accident and has at least one flashback. This occurred several weeks ago when he attempted to return to work on another drilling rig. He became extremely anxious and afraid to touch anything especially after he was trying to assist in tying off a vibrator hose when the rope broke jerking him and straining his groin. He became highly anxious, nauseous and vomited. He had a flashback of this episode.

(R. Doc. 35-2, Ex. OPE 1, p. 1.)  Based on these findings, Dr. Quillin diagnosed Gresham with (1) probable post traumatic stress disorder ("PTSD") and (2) mild chronic pain syndrome. (R. Doc. 35-2, Ex. OPE 1, p. 2.)  Therefore, Dr. Quillin prescribed various medications, including (1) 25 mg of Zoloft daily, with evaluation for tolerance and effectiveness and (2) 0.5 mg of Clonazepam. (R. Doc. 35-2, Ex. OPE 1, p. 2.)  He also sought to objectively evaluate Gresham's mood status with a PAI and his pain adjustment capabilities with an "MPI." (R. Doc. 35-2, Ex. OPE 1, p. 2.)

On March 21, 2008, Dr. Quillin updated his diagnoses of Gresham, as (1) mild but improving PTSD with depression, (2) mild chronic pain syndrome, and (3) adaptive pain adjustment classification. Dr. Quillin clarified that Gresham's PTSD was largely asymptomatic with treatment. Dr. Quillin prescribed Gresham to take 50 mg of Zoloft daily, with two additional refills, and to follow-up with him in three months, but to contact him earlier, as the need arose.

Despite Dr. Quillin's diagnoses, and after the passing of relevant pre-trial deadlines, Cal Dive contends that it only recently discovered that Gresham experienced panic attacks as a result of his thumb injury. Cal Dive asserts that during the settlement conference on June 26, 2008, it discovered that on June 24, 2008 Gresham left an offshore rig upon which he was working because of a "relapse" involving vertigo and stress-related diarrhea attributable to the accident. Thereafter, on June 30, 2008, during Dr. Quillin's deposition, Dr. Quillin allegedly testified that Gresham contacted him telephonically and related a history of offshore panic attacks, from February 2007. Dr. Quillin purportedly opined that if Gresham could not control his panic attacks, there was a 50% chance that he would permanently be precluded from offshore work because the medication necessary to treat the condition is prohibited in offshore work.

Cal Dive maintains that it knew nothing of Gresham's alleged "history" of panic attacks until June 30, 2008, and also did not know of any opinions that he would be permanently unable to return to work offshore because of those panic attacks. Therefore, Cal Dive brings the present motion, in which it now seeks to undertake an independent medical examination ("IME") of Gresham, to ascertain the extent of Gresham's psychological injuries. Cal Dive argues that Gresham's expert reports do not mention any such panic attacks, and Gresham ultimately returned to his previous offshore work after the accident and was allegedly being considered for a promotion. Cal Dive argues that it has been unfairly prejudiced by Gresham's late revelation.

In opposition, Gresham maintains that he began treatment for psychological injuries on January 31, 2008, and that Cal Dive knew or should have known of his panic attacks at least by February 26, 2008, when Dr. Quillin observed that Gresham experienced nightmares, stress, and "flashbacks" of the accident, all which evidently stemmed from his thumb injury. Furthermore, on

4

April 25, 2008, Gresham's evaluating representative, Nathaniel Fentress ("Fentress") noted that Gresham suffered from PTSD and vocational disability from the injury. Counsel for Gresham allegedly emailed Fentress's report to counsel for Cal Dive, via email.

However, counsel for Cal Dive maintains that after scouring his email storage folders, he never received any such email on April 25, 2008, outlining Gresham's psychological symptoms. Furthermore, Fentress is not a psychologist or psychiatrist. Therefore, Cal Dive stresses that it would be unfair to hold it to Fentress's report. While Cal Dive concedes that Dr. Quillin did diagnose Gresham with mild PTSD and depression on June 17, 2008, Cal Dive maintains that Dr. Quillin's opinion that Gresham relapsed between June 17, 2008 to June 30, 2008 now makes an IME necessary to ascertain the nature and extent of Gresham's psychological state after the relapse. (R. Doc. 36-4, Ex. 1.)

## II.     Standard of Review

Federal Rule of Civil Procedure ("Rule") 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." The Rules specify that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Hebert v. Lando,* 441 U.S. 153, 176 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Furthermore, "it is well established that the scope of discovery is within the sound discretion of the trial court." *Coleman v. American Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994).

Under Rule 35, a court may order a party "to submit to a physical or mental examination by a suitably licensed or certified examiner" when the mental or physical condition of that party is in controversy. Fed. R. Civ. P. 35(a). The court may issue such an order "on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made." Fed. R. Civ. P. 35(a). Thus, there is a two-part test for determining whether the motion will be granted. First, the physical or mental state of the party must be in controversy. Second, the moving party must show good cause as to why the motion should be granted. *Schlagenhauf v. Holder*, 379 U.S. 104 (1964). "Good cause" requires a showing of specific facts that demonstrate the need for the information sought and lack of means for obtaining it elsewhere. *Id.* at 118. A "plaintiff in a negligence action who asserts mental or physical injury places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." *Id*. at 119.

### III.  Analysis

Here, the parties do not dispute that Gresham's psychological state is in controversy and that there is good cause for an IME to ascertain the effects of his psychological injuries. Rather, the parties disagree as to whether Cal Dive may take an IME now, after the discovery deadline, even though Cal Dive had evidence of Gresham's psychological maladies earlier on in the litigation. Cal Dive filed the subject motion on July 2, 2008, six business days after the discovery deadline. In its motion, Cal Dive argues that it should be permitted to take a belated IME of Gresham because it only recently discovered that Gresham suffered serious psychological ramifications, or "panic attacks" from the subject accident. The Court disagrees.

Based on the medical evidence in the record, the Court notes that Gresham exhibited nervousness and fear from the accident as early as January of 2008, when Dr. Quillin diagnosed Gresham with PTSD and depression, and documented Gresham's sleep problems, anxiety, and his feeling of experiencing a heart attack with tachycardia. At that time, Dr. Quillin noted that Gresham experienced "*at least one* flashback" of the accident, becoming extremely anxious, fearful and nauseous while working on a drilling rig. (R. Doc. 35-2, Ex. OPE 1, p. 1, emphasis added.) During that episode, a rope broke and jerked him, straining his groin. (R. Doc. 35-2, Ex. OPE 1, p. 1.) Thereafter, on March 21, 2008, Dr. Quillin again reiterated his diagnoses of PTSD and depression, though he indicated that his PTSD was mild and largely asymptomatic with treatment.

Given Dr. Quillin's impressions and diagnoses, Gresham clearly manifested psychological symptoms from the accident in January and March of 2008. However, Cal Dive failed to seek any medical examination of Gresham until July 2008 after the pass of the discovery deadline, over five months later.

Cal Dive contends that its belated actions in seeking Gresham's IME are justifiable because (1) in January, Gresham exhibited only mild PTSD, resolving with treatment, (2) in March, Gresham was off medication and largely asymptomatic, and (3) in June, at his deposition, Gresham testified that he had no other incidents offshore, than general nervousness. However, the Court stresses while there was evidence that Gresham's symptoms had fluctuated or decreased, there was never evidence that Gresham's symptoms had resolved completely.

Based on the medical information regarding Gresham's continuing psychological condition, the Court denies Cal Dive's request to take Gresham's IME in violation of the Court's Scheduling Order. The Court will not permit Cal Dive's attempt to subject Gresham to an IME beyond the

Court's deadline because of its own failed litigation strategy of not pursuing evidence surrounding Gresham's ongoing psychological maladies.

### IV.   Conclusion

Accordingly,

**IT IS ORDERED** that Cal Dive's **Motion to Compel Independent Psychiatric Examination Due to Plaintiff's New Claims of Psychological Injury (R. Doc. 26)** is **DENIED**.

**IT IS FURTHER ORDERED** that Cal Dive's **Ex Parte Motion for Leave to File Reply Memorandum (R. Doc. 36) is GRANTED**, as it was considered in the Court's opinion here.

New Orleans, Louisiana, this 24th day of July 2008

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**